ERNST STEIN, Plaintiff, *v.* PERSHING SQUARE BUILDING CORPORATION, Defendant.

Supreme Court, Trial Term, New York County, January 23, 1948.

*A.. Edw. Masters* and *Daniel A. Novak* for plaintiff.

*Raymond J. Scully* for defendant.

*John P. Smith* and *Thomas F. Keane* for Stouffer, impleaded defendant.

WALTER, J.   Defendant owns the building at the southeast corner of Park Avenue and 42d Street, New York City.   It

extends southerly to the northerly side of 41st Street, and on the 41st Street side of the building there is a sidewalk lift or elevator which operates between the street level and the building's basements below as a means of taking freight to and from the sidewalk and basements.

On October 15, 1943, plaintiff, in the course of his work as a receiving clerk in the employ of a corporation which operated a restaurant in the building, was on this elevator, along with another employee of that corporation who was operating the elevator and a number of empty egg crates which they were taking from the restaurant kitchen to the sidewalk with the intention of then taking restaurant supplies from the sidewalk to the kitchen. As the elevator was ascending, plaintiff in some way lost his balance, put his foot out beyond the floor of the elevator, caught it under a metal flange or saddle which protruded out from the shaft wall somewhere from one eighth of an inch to an inch, and thereby was caused to lose four toes.

Undoubtedly because his only remedy against his employer was a claim under the Workmen's Compensation Law, plaintiff brought this action against the owner of the building to recover damages.

There is evidence from which a jury could find that plaintiff was injured because of a negligently defective condition of the elevator, and that plaintiff was free from contributory negligence; but the evidence also shows beyond the possibility of any contrary finding that long before the accident defendant had divested itself of any and all possession or control of the elevator and its appurtenances by investing possession and control in its lessee, plaintiff's employer, the operator of the restaurant. For that reason, at the conclusion of the trial I granted defendant's motion to direct a verdict in its favor. At the time I was required to pass upon that motion I had had no opportunity to formulate an opinion, and I made only a very sketchy, and I fear a not very coherent statement of my reasons; and the nature and importance of the case are such that it seems to me appropriate that although the case already has been disposed of I should now make a better statement of my views.

Liability in tort such as is here sought to be fastened upon defendant is an incident of occupation and control, and that means, not merely a right to enter for the purpose of making repairs, nor even an agreement to make them, but such power of control as gives the right to admit or exclude people. (*Cullings* v. *Goetz* 256 N. Y. 287, 290; *Campbell* v. *Holding Co., Inc.*, 251 N. Y. 446; *Potter* v. *N. Y., O. & W. Ry. Co.*, 261 N. Y. 489, 492, 493; *Lafredo* v. *Bush Terminal Co.*, 261 N. Y. 323,

325, 326; *Homin* v. *Cleveland & Whitehill Co.,* 281 N. Y. 484; *Fink* v. *37 West 36th St. Co.,* 251 App. Div. 261, 262, per Mr. Justice DORE writing in support of the view which finally prevailed in 277 N. Y. 703. See, also, *Martin* v. *Pettit* 117 N. Y. 118; *Kirby* v. *Newman,* 239 N. Y. 470; *Tilem* v. *Alon Holding Corp.,* 276 N. Y. 531; *Siegal* v. *Gordon,* 278 N. Y. 416, which, although not exactly analogous because they involve negligent use or operation, as distinguished from negligent disrepair, nevertheless are instances in which complaints against owners out of possession were dismissed.)

Upon the trial plaintiff contended that the following provisions of the Administrative Code of the City of New York (L. 1937, ch. 929) enlarge the liability of the owner as laid down in the cases:

" § C26–1171.0. *Responsibility.*—a. Responsibility of owner. — The owner of the structure, in which an elevator, escalator or dumbwaiter is installed, shall be responsible for the safe operation and proper maintenance of such elevator, escalator or dumbwaiter, after such elevator, escalator or dumbwaiter has been approved by the superintendent.

" b. Responsibility for inspection and maintenance.— The owner of the structure, in which an elevator, escalator or dumbwaiter is installed, or his duly appointed agent shall cause periodic inspections to be made of all parts of each elevator, escalator, and dumbwaiter installation. Such owner or agent shall maintain all parts of such elevator, escalator and dumbwaiter installation in proper working order in accordance with the provisions of this title and the rules of the board."

" § C26–103.0. *Owner.*— The term ' owner ' shall mean and include the owner or owners of the freehold of the premises or lesser estate therein, a vendee in possession, a mortgagee or receiver in possession, an assignee of rents, a lessee or joint lessees of the whole thereof, an agent or any other person, firm or corporation directly in control of such building."

His counsel cited as analogous *Weiner* v. *Leroco Realty Corp.* (279 N. Y. 127), in which it was held that the obligation to keep a multiple dwelling in repair, which section 78 of the Multiple Dwelling Law imposes upon the owner, is not ended by the owner's parting with possession and control by making a lease of the entire building.

Assuming, without deciding, that the complaint and bill of particulars are sufficient to enable plaintiff to raise that point, I conclude that it is untenable.

In the definition of the term " owner " in the Administrative Code there seems to me to be some rather plain implications

that the intent was to impose the responsibilities stated in section C26-1171.0 upon the person in actual possession and control. But above and beyond that, section 78 of the Multiple Dwelling Law and the sections of the Administrative Code here invoked are different in purpose, nature and application. The purpose of section 78 is to protect tenants of the owner — those whom he has brought into his building upon their promise to pay him rent; it applies to persons between whom there is a relationship of contract; and it was enacted in response to an enlightened and aroused public opinion demanding that the common-law liabilities of the owners of multiple dwellings be enlarged.

The Administrative Code, on the other hand, is merely a codifying statute. It was not enacted with any idea of making changes in substantive law. The sections here invoked are designed for the protection of users in general and even of pedestrians in general, regardless of their relation or lack of relation to either the owner or the occupant of the elevator, and I am not persuaded that in this codifying statute the Legislature intended to make the very sweeping extension of liability of owners which plaintiff's argument suggests. If there had been real intent to make so sweeping a change in the settled and widespread rule laid down in the cases I have cited, I feel sure such intent would have been clearly and unambiguously expressed in some statute frankly designed to change existing law.